*Eastern Dist.*
*April,* 1832.

GOSSELIN
vs.
ABAT.

An error in a policy of insurance may be corrected, by the memorandum left by the insured and the answer thereon of the officer of the company.

---

### GOSSELIN vs. ABAT.

APPEAL FROM THE COURT OF THE PARISH AND CITY OF NEW-ORLEANS.

Parole evidence may be received of the probable revenue of the common property.

When the surviving spouse and the heirs of the deceased, suffer the common property to remain undivided, the profits take the nature of the capital, and are equally subject to the rules which govern partitions, and no prescription runs thereon.

The facts are stated in the opinion of the court, delivered by *Mathews, J.*

The proceedings, in this case, commenced by a rule taken on the testamentary executor of the late Widow Gosselin, to show cause why he should not give up the seizin of the succession of the testatrix to the plaintiffs, her legitimate heirs.

The executor opposed this rule, on several grounds. 1. That the testatrix had bequeathed legacies under an universal title, and that the legatees should be called in to defend. 2. That he never had seizin of the estate of the deceased, except so far as causing seals to be affixed, and an inventory to be made of the property, which remained in the possession of the plaintiffs, after the death of the testatrix. In the third and last place, he claims a right to continue his functions of executor until payment of the legacies ordered by the will.

This rule seems not to have been disposed of by the court ; but was superseded in consequence of the legatees coming in and claiming their legacies from the heirs. Their claim was opposed, in the first instance, as being premature, as the legal delay, allowed to liquidate and pay the debts of the estate, had not expired. There was, finally, an agreement entered into between all the parties interested and concerned, to have the succession inventoried and sold, which was done, and the debts settled by an order of the court below. The will gives to the legatees, the whole of the disposable portion of the succession of the testatrix, which is one-third. The heirs, however, deny the right of the claimants, under the will, to take any thing, except such portion as may remain for them after payment of all the debts owing by the testatrix ; and they set up a claim against her estate for an amount exceeding the sum produced by its sale. This claim being, in part, allowed by the Court of Probates, leaves nothing for the legatees, and they appealed from the judgment thus rendered.

The facts of the case are as follows : Gosselin, the father of these heirs, died in 1787. His wife, their mother, remained in possession of the matrimonial community until her death, without having caused an inventory to be made, and enjoyed

the revenues and profits of the entire property, never having rendered any account to her children and forced heirs of their father. At his death, he left three heirs; one of them subsequently died, to whom the mother became heir, by which she acquired a right to two-thirds of the whole community, and the heirs, now surviving, to one-third. The testimonial proof, offered to establish the probable value of the revenues derived from the property of the community, which was held and used by the testatrix for upwards of forty years, seems to support the estimate, made in favor of the heirs by the court below, in rendering its judgment; and if they be legally entitled to recover that sum, as creditors of their mother, her estate will not suffice to pay the legacies.

An exception was taken to the admissibility of testimony to prove the probable value of the revenues of the common property, as administered by the surviving partner. But as she kept no account of them, the proof offered was the only means by which that fact could be established, and was properly admitted.

Parole evidence may be received of the probable revenue of the common property.

Against the claim of the heirs, as creditors, prescription is pleaded. This, we are of opinion, cannot prevail. The property remained in common, after the decease of their father, between his heirs and their mother, and the revenues and profits may be considered as partaking of the nature and situation of the capital on which they were gained, and, consequently, subjected to rules relating to partitions, against which no prescription runs so long as things remain in common, and such community is acknowledged or proved; (*Louisiana Code, article* 1227;) and, in the present case, the community was acknowledged, both by the mother and her heirs, in two suits brought by the parties, one in the District Court, in which the former was plaintiff, the other in the Court of Probates, where the others were plaintiffs.

When the surviving spouse and the heirs of the deceased, suffer the common property to remain undivided, the profits take the nature of the capital, and are equally subject to the rules which govern partitions, and no prescription runs thereon.

The most difficult question, which the case presents, is that arising on the allegation of confusion, made by the legatees against the claim of the heirs as creditors. If they must be considered as having assumed the standing of heirs to the succession of their mother, without the benefit of an inventory,

i. e. if they have accepted the inheritance, without the precaution necessary to limit their responsibility for the debts of their ancestor to the amount of the succession, it is believed that their credit became extinguished by such acceptance, according to the doctrine of confusion as established by our laws. The Louisiana Code treats this subject concisely, giving few examples to illustrate the principles laid down. See *articles* 2214–5. *Toullier*, in his Commentaries on the French Civil Law, and *Pothier*, in his Treatise on Obligations, give the examples of confusion which takes place when a debtor becomes heir to his creditor, and *vice versa*, when the creditor is heir to his debtor. In both these cases, by accepting the inheritance without inventory, the debt or obligation is extinguished; because an heir, in this situation, is identified with the succession; but when an inventory is made, the heir and succession are considered as distinct persons. See 7 *Toullier, page* 501, *no.* 424. *Pothier on Obligations, no.* 606.

In the present case, an inventory was made in presence of the executor, the heirs, and one of the legatees. This instrument contains the whole of the undivided property belonging to the testatrix and her heirs, which was held in community by them during her life time, (as appears by the record of a suit instituted by her, a short time before her death, requiring a partition of said property.) But the counsel for the executor and legatees, contends that the heirs should not be allowed any benefit from this inventory, as having been unfaithfully made on their part, and in consequence of their having assumed the character of heirs, by intermeddling with the affairs of the estate, before the inventory was made. In support of this allegation of intermeddling, and fraud and concealment, reliance is had on the evidence of a small sum of money, and some other articles of little value, having been seen in the house of the deceased after her death, and which do not seem to have been inventoried; and also, on testimony which shows that one of the heirs received some rent, due to the community for the lease of a pasture, which had been let by the testatrix previous to her death. As to the money (amounting only to about nine dollars)

and the other articles seen in the house, there is no evidence showing what became of them. The seals were affixed on the property of the succession, by the executor, and they were found unbroken, when the register of wills proceeded to make the inventory. There is no proof that these things were taken by the heirs for their own use ; and if they were, under all circumstances of the case, such conduct ought not to deprive them of the benefits of the inventory, and render them subject to all the responsibility of heirs, pure and simple (as denominated by our law.) Neither can the receipt of the rent due for the pasture. The property, left by their mother, was common to them and her. She, it is true, had the administration of it during her life, (apparently by their consent,) and used the revenues and profits as her own, legally subject, however, to account to her co-proprietors for their share. At her death they might well have assumed the administration of this estate (being property common to them and the deceased) as surviving proprietors, not as heirs ; and, in their turn, become responsible to her succession for the part which justly belonged to it We, therefore, conclude that they ought not, in consequence of these acts, to be deprived of the benefit of the inventory, as made, in consequence of having improperly intermeddled with the inheritance. This inventory does not expressly set apart the estate of the testatrix, by separating it from the mass of the property composing the community ; but as the whole was sold by consent of all the owners and claimants, and as the amount of the portion belonging of right to the children, as heirs of their father, and that belonging to their mother, are each ascertained by the evidence of the cause, they may be considered as separated, for the purpose of settling the present dispute between the heirs and legatees. The succession of the testatrix being thus made known by the inventory, and the heirs being entitled to its benefit, the confusion, which might otherwise arise from the double capacity of heirs and creditors, does not take place, unless the inventory must be considered as wholly null and void, in consequence of the alleged concealment on the part of the heirs. Their right to assume the administration

70

of the property left by their mother, at her death, constituting a community between them and her during her life time, without incurring, by such assumption, the responsibility imposed, by law, on heirs absolute and unconditional, has been stated. But as the debts due to the community, and by them received, should have made a part of the property inventoried, the sums thus received ought to have been placed on the inventory, and it was the duty of those, who received them, to cause this to be done. The question then arises, whether the negligence and omission of the heirs, in relation to this part of the succession, *ipso facto*, annuls the inventory and renders it void, *ab initio*.

This question is proposed and decided in the negative by *Febrero* in that part of his Commentaries which treats of inventories. See *p. 2, B. 1. chap.* 1, § 4, *nos.* 46—50. According to the principles, assumed in relation to a concealment, such as is alleged against the heirs in the present case, to produce effects prejudicial to their interest, it is necessary to prove that the concealment was fraudulently made. No such proof appears in the record. What became of the small sum of money and other articles of little value, seen in the house of the deceased, does not appear. The debt due for the rent of the pasture was received openly, and a receipt given to the debtor. The heirs had a claim on the estate of their mother on account of sums owing to them for the revenues of the common property, which had been appropriated by her, during her life time, to her own use.

Under all these circumstances, we are of opinion that the neglect complained of, to place these articles on the inventory, should rather be attributed to error in judgment than to fraudulent concealment.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Probate Court be affirmed, with costs.